# AXIS Surplus Insurance Company

### COMMERCIAL GENERAL LIABILITY – OCCURRENCE FORM
### CONTRACTOR'S POLLUTION LIABILITY – CLAIMS MADE FORM
### PROFESSIONAL LIABILITY – CLAIMS MADE FORM

#### PLEASE READ THE ENTIRE FORM CAREFULLY

**COVERHOLDER:**     DUAL Commercial, LLC

**POLICY NUMBER:**   EMP19001053-01               **RENEWAL OF:**   New

**COMPANY:**     AXIS Surplus Insurance Company

**1. NAMED INSURED:**     Robert E. Lee & Associates, Inc.; Northern Ecological Services
**MAILING ADDRESS:**     1250 Centennial Centre Blvd
Hobart, WI  54155

**2. POLICY PERIOD:**     a. Inception Date:   6/1/2019          b. Expiration Date:   6/1/2020
at 12:01 A.M.  Standard Time at your mailing address shown above.

**3. LIMITS OF LIABILITY:**

| | |
|---|---|
| Policy Aggregate Limit for All Claims and Damages: | $5,000,000 |
| Policy Aggregate Limit for All Claims Expenses: | $5,000,000 |
| | |
| Commercial General Liability | |
| Each Occurrence: | $2,000,000 |
| General Aggregate: | $2,000,000 |
| Products-Completed Operations Aggregate: | $2,000,000 |
| Personal and Advertising Injury: | $2,000,000 |
| Medical Expense: | $10,000 |
| Damage to Premises Rented to You: | $100,000 |
| Contractors Pollution Liability | |
| Each Claim: | $5,000,000 |
| Aggregate: | $5,000,000 |
| Each Claims Expense: | $5,000,000 |
| Aggregate Claims Expense: | $5,000,000 |
| Professional Liability | |
| Each Claim: | $5,000,000 |
| Aggregate: | $5,000,000 |
| Each Claims Expense: | $2,000,000 |
| Aggregate Claims Expense: | $2,000,000 |

**4. DEDUCTIBLE:**

| | |
|---|---|
| Commercial General Liability | $10,000  per Occurrence |
| Contractors Pollution Liability | $50,000  per Claim |
| Professional Liability | $50,000  per Claim |

Case 1:23-cv-00451-WCG     Filed 04/06/23     Page 1 of 83     Document 1-1

EXHIBIT A

**5. PREMIUM:**

| | | |
|---|---|---:|
| Annual Policy Premium | $ | 134,900.00 |
| Minimum Earned Premium | $ | 33,725.00 |
| Rate per $1,000 Receipts | | FLAT |
| Exposure Basis: Revenue | $ | 6,800,000 |
| Policy Fee | $ | 150.00 |

**Premium is Minimum and Deposit**

SL Tax: $4,051.50

**6. RETROACTIVE DATE:**

Contractors Pollution Liability-
June 1, 1996 as respects the following Limits of Liability
Each Claim:                        $2,000,000
Aggregate:                         $2,000,000
Each Claims Expense:               $2,000,000
Aggregate Claims Expense:          $2,000,000

June 1, 2019 as respects the difference between:
Each Claim:                        $2,000,000
Aggregate:                         $2,000,000
Each Claims Expense:               $2,000,000
Aggregate Claims Expense:          $2,000,000
And
Each Claim:                        $5,000,000
Aggregate:                         $5,000,000
Each Claims Expense:               $5,000,000
Aggregate Claims Expense:          $5,000,000

<span style="color:red">This insurance contract is with an insurer which has not obtained a certificate of authority to transact a regular insurance business in the state of Wisconsin, and is issued and delivered as a surplus line coverage pursuant to s. 618.41 of the Wisconsin Statutes. Section 618.43(1), Wisconsin Statutes, requires payment by the policyholder of 3.0% tax on gross premium.</span>

Professional Liability
August 1, 1956 as respects the following Limits of Liability:
Each Claim                         $2,000,000
Aggregate                          $2,000,000
Each Claims Expense                $2,000,000
Aggregate Claims Expense           $2,000,000

June 1, 2017 as respects the difference between:
Each Claim                         $2,000,000
Aggregate                          $2,000,000
Each Claims Expense                $2,000,000
Aggregate Claims Expense           $2,000,000

And:
Each Claim                         $3,000,000
Aggregate                          $3,000,000
Each Claims Expense                $3,000,000
Aggregate Claims Expense           $3,000,000

June 1, 2018 as respects the difference between:
Each Claim                         $3,000,000
Aggregate                          $3,000,000
Each Claims Expense                $3,000,000
Aggregate Claims Expense           $3,000,000

Case 1:23-cv-00451-WCG    Filed 04/06/23    Page 2 of 83    Document 1-1

And:

| | |
|---|---|
| Each Claim | $4,000,000 |
| Aggregate | $4,000,000 |
| Each Claims Expense | $4,000,000 |
| Aggregate Claims Expense | $4,000,000 |

June 1, 2019 as respects the difference between:

| | |
|---|---|
| Each Claim | $4,000,000 |
| Aggregate | $4,000,000 |
| Each Claims Expense | $4,000,000 |
| Aggregate Claims Expense | $4,000,000 |

And:

| | |
|---|---|
| Each Claim | $5,000,000 |
| Aggregate | $5,000,000 |
| Each Claims Expense | $2,000,000 |
| Aggregate Claims Expense | $2,000,000 |

**7. NOTICE OF CLAIM TO:**

**AXIS Insurance**
**Attn: Claims Department**
**11680 Great Oaks Way, Suite 500**
**Alpharetta, GA 30022**
**Fax: 866-770-5629**
**Email: 'usclaimnoticebh@axiscapital.com'**

**FORMS AND ENDORSEMENTS ATTACHED**
**AT INCEPTION:** See Schedule of Forms

**THESE DECLARATIONS TOGETHER WITH THE APPLICATION, FORMS AND ENDORSEMENTS ISSUED TO FORM A PART THEREOF, COMPLETE, THE ABOVE NUMBERED POLICY.**

7/10/2019
_____ _____
(Date) (Authorized Representative)

Case 1:23-cv-00451-WCG    Filed 04/06/23    Page 3 of 83    Document 1-1



# SIGNATURE PAGE

IN WITNESS WHEREOF, the Insurer has caused this policy to be issued by affixing hereto the facsimile signatures of its President and Secretary.

Secretary

President

Andrew Weissert, Secretary

Carlton Maner, President

# *NOTICE TO POLICYHOLDER*
## IMPORTANT CLAIM INFORMATION

TO REPORT A CLAIM OR IF YOU HAVE ANY QUESTIONS RELATED TO A CLAIM, PLEASE REFER THESE MATTERS TO THE ADMINISTRATORS AS OUTLINED BELOW:

### <u>FOR ALL LOSSES</u>

PLEASE CALL, FAX OR EMAIL:
AXIS Insurance

### **VIA Email:**

usclaimnoticebh@axiscapital.com

### **VIA FAX:**

1-866-770-5629

### **VIA MAIL:**

AXIS Insurance
PO Box 4470
Alpharetta, GA 30022

### **VIA UPS/FED Ex:**

AXIS Insurance
Attn: Claims Department
11680 Great Oaks Way, Suite 500
Alpharetta, GA 30022



**POLICYHOLDER NOTICE**

**WISCONSIN**

This insurance contract is with an insurer which has not obtained a certificate of authority to transact regular insurance business in the state of Wisconsin, and is issued and delivered as a surplus line coverage pursuant to s. 618.41 of the Wisconsin Statutes. Section 618.43(1), Wisconsin Statutes, requires payment by the policyholder of 3% tax on gross premium.



# SERVICE OF SUIT

# WISCONSIN

The Company hereby designates the Commissioner of Insurance and the Department of Financial Institutions, or their respective designees, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by you or on your behalf or by any beneficiary under this Policy against the Company arising out of this Policy, provided that said lawful process received by the Commissioner of Insurance or the Department of Financial Institutions, or their respective designees, is sent by certified or registered mail to the Company at:

**AXIS U.S. Insurance**

**Attn: Claims Administrator**

**11680 Great Oaks Way**

**Suite 500**

**Alpharetta, GA 30022**

AXIS WI 106 (04-15)



**WISCONSIN NOTICE TO POLICYHOLDER**

**KEEP THIS NOTICE WITH YOUR INSURANCE PAPERS**

**PROBLEMS WITH YOUR INSURANCE?**  If you are having problems with your insurance company or agent, do not hesitate to contact the insurance company or agent to resolve your problem.

**AXIS Insurance Company**
**11680 Great Oaks Way, Suite 500**
**Alpharetta, Georgia  30022**

**1-866-259-5435**

You can also contact the **OFFICE OF THE COMMISSIONER OF INSURANCE**, a state agency which enforces Wisconsin's insurance laws, and file a complaint.  You can contact the **OFFICE OF THE COMMISSIONER OF INSURANCE** by writing to:

**Office of the Commissioner of Insurance**
**Complaints Department**
**PO Box 7873**
**Madison, Wisconsin  53707-7873**

or you can call 1-800-236-8517 outside of Madison or (608) 266-0103 in Madison, and request a complaint form.

# Schedule of Forms

Named Insured  Robert E. Lee & Associates, Inc.; Northern Ecological Services

Policy No:  EMP19001053-01          AXIS Surplus Insurance Company

| Form Name | Form Edition No |
|---|---|
| Declarations Page | PGI EL 001 0918 |
| Signature Page | AXIS 102 ASIC |
| Notice to Policyholder | AXIS001 0918 |
| Policyholder Notice | AXIS WI 105 0316 |
| Service of Suit | AXIS WI 106 0415 |
| Wisconsin Notice to Policyholder | AXIS WI 901 0815 |
| Schedule of Forms | PGI EL 041 0210 |
| Commercial General Liability Coverage Form | CG00011207 |
| Financial Interest Clause | PGI PL 083 0518 |
| Employee and Benefits Liability Coverage | CG04351207 |
| Additional Insured - Owners, Lessees or Contractors - Scheduled Person or Organization | CG20100704 |
| Additional Insured - Owners, Lessees, or Contractors - Completed Operations | CG20370704 |
| Employment - Related Practices Exclusion | CG21470798 |
| Exclusion - Exterior Insulation and Finish Systems | CG21861204 |
| Waiver of Transfer of Rights of Recovery Against Others To Us | CG24041093 |
| Exclusion - Testing or Consulting E & O | CG22330798 |
| Contractor's Pollution Liability Coverage Form – Occurrence | PGI EL 004 0918 |
| Professional Liability Coverage Form - Claims Made | PGI EL 005 0918 |
| Common Policy Conditions | PGI EL 036 0210 |
| Mold, Mildew and Fungus Deductible | PGI EL 009 0210 |
| Additional Insured Endorsement | PGI EL 018 0210 |
| Primary and Non-Contributory Wording Endorsement | PGI EL 020 0210 |
| Policy Aggregate Endorsement | PGI EL 002 0210 |
| Waiver of Subrogation Endorsement | PGI EL 019 0210 |
| Transportation of Cargo – Pollution Endorsement | PGI EL 010 1017 |
| Designation of Surplus Lines Agent | PGI PL 002 |
| Defense Included Endorsement | PGI EL 047 1112 |
| Defense Included Endorsement | PGI EL 048 1112 |
| TCPA Exclusion | PGI PL 074 1212 |
| Prior and Pending Litigation Exclusion Endorsement | PGI EL 052 0614 |
| Exclusion - All Work Performed in the State of New York | PGI EL 057 0915 |
| Deductible Liability Insurance | CG03000196 |
| Network Security | PGIEL059 0917 |
| Notice of Terrorism Insurance Coverage - TRIA Declined | TRIA Declined Disclosure 0115 |
| U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") | DE0010 1210 |

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERAGES

## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

© ISO Properties, Inc., 2006

Case 1:23-cv-00451-WCG   Filed 04/06/23   Page 10 of 83   Document 1-1

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© ISO Properties, Inc., 2006
CG 00 01 12 07

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

  (i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

  (ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

  (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

  (i) Any insured; or

  (ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

  (i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

  (ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

  (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

© ISO Properties, Inc., 2006
Case 1:23-cv-00451-WCG    Filed 04/06/23    Page 12 of 83    Document 1-1

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

**(b)** the operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

Case 1:23-cv-00451-WCG    © ISO Properties, Inc., 2006    Filed 04/06/23    Page 13 of 83    Document 1-1    CG 00 01 12 07

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Distribution Of Material In Violation Of Statutes**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**(3)** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

© ISO Properties, Inc., 2006

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

### 1. Insuring Agreement

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

### 2. Exclusions

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of websites for others; or

© ISO Properties, Inc., 2006
CG 00 01 12 07

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Distribution Of Material In Violation Of Statutes**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**(3)** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

**COVERAGE C MEDICAL PAYMENTS**

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

 © ISO Properties, Inc., 2006

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A.**

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

Case 1:23-cv-00451-WCG    © ISO Properties, Inc., 2003    Filed 04/06/23    Page 17 of 83    Document 1.00  CG 00 01 12 07

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II – WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by, or

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

© ISO Properties, Inc., 2006

Case 1:23-cv-00451-WCG   Filed 04/06/23   Page 18 of 83   Document 1-1

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

  **(1)** With respect to liability arising out of the maintenance or use of that property; and

  **(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

**a.** Medical expenses under Coverage **C;**

**b.** Damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**c.** Damages under Coverage **B.**

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to Paragraph **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

**a.** Damages under Coverage **A;** and

**b.** Medical expenses under Coverage **C**

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

  **(1)** How, when and where the "occurrence" or offense took place;

  **(2)** The names and addresses of any injured persons and witnesses; and

 © ISO Properties, Inc., 2006

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section I – Coverage **A** – Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

 © ISO Properties, Inc., 2006

Case 1:23-cv-00451-WCG    Filed 04/06/23    Page 20 of 83    Document 1

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

© ISO Properties, Inc., 2008

CG 00 01 12 07

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

Case 1:23-cv-00451-WCG Filed 04/06/23 Page 22 of 83 Document 1-1

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

   a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   b. While it is in or on an aircraft, watercraft or "auto"; or

   c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

   but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   b. Vehicles maintained for use solely on or next to premises you own or rent;

   c. Vehicles that travel on crawler treads;

   d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

      (1) Power cranes, shovels, loaders, diggers or drills; or

      (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

   e. Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

      (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

      (2) Cherry pickers and similar devices used to raise or lower workers;

   f. Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

   (1) Equipment designed primarily for:

      (a) Snow removal;

      (b) Road maintenance, but not construction or resurfacing; or

      (c) Street cleaning;

   (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   a. False arrest, detention or imprisonment;

   b. Malicious prosecution;

   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

   f. The use of another's advertising idea in your "advertisement"; or

   g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

© ISO Properties, Inc., 2003

Case 1:23-cv-00451-WCG   Filed 04/06/23   Page 23 of 83   Document 1-1

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

© ISO Properties, Inc., 2006

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

**(2)** The providing of or failure to provide warnings or instructions.

**FINANCIAL INTEREST CLAUSE**

In consideration of the premium charged and subject to the terms, conditions, limitations and exceptions of this Policy, the Insurer shall provide coverage to the First Named Insured for its financial interest in any specific entity which would otherwise be covered under this Policy but which is located in a jurisdiction where:

(i)     applicable law or regulation do not, to the best of the Insurer's good faith knowledge, allow it to provide coverage;   or

(ii)    the First Named Insured has elected that the Policy will not cover such specific entity directly but will cover the First Named Insured's own financial interest in such entity.

The Insurer and First Named Insured agree that:

(iii)   the First Named Insured has a financial interest in the specific Entity because it benefits financially from the continued operation of the specific Entity and/or would be prejudiced by loss to, or damage to, or liability incurred by the specific Entity in the operation of its business; and

(iv)    the Insurer shall indemnify the First Named Insured in respect of any loss to its financial interest, in the amount which would have been payable to the specific Entity if a policy with the same terms and conditions as this Policy had been issued to such specific entity, save that no indemnity shall be provided in respect of any insuring clause which would have covered any individual person. The Policy will not provide any coverage to the specific entity.

Where the First Named Insured is indemnified under this Policy for a loss to its financial interest, the Insurer shall be subrogated to all rights and remedies of the First Named Insured.   If requested by the Insurer, the First Named Insured shall:

(v)     report fully and fairly on any causes of action which the specific Entity may have against any third party arising out of the facts and circumstances which gave rise to the loss; and

(vi)    arrange to be assigned the benefit of any cause of action the specific entity may have against any such third party (including any insurer issuing a policy to the Uncovered Entity) and that the specific Entity shall cooperate with the Insurer in pursuing such cause of action.

Any sanctions exclusion in the Policy will take precedence over this financial interest clause.   All other terms, conditions and limitations of the Policy shall remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYEE BENEFITS LIABILITY COVERAGE

**THIS ENDORSEMENT PROVIDES CLAIMS-MADE COVERAGE.
PLEASE READ THE ENTIRE ENDORSEMENT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Coverage | Limit Of Insurance | | Each Employee Deductible | | Premium |
|---|---|---|---|---|---|
| **Employee Benefits Programs** | $    1,000,000 | **each employee** | $ | 2,500 | $        Included |
| | $    1,000,000 | **aggregate** | | | |
| **Retroactive Date:** | 6/1/2015 | | | | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | | | | |

A. The following is added to Section I – Coverages:

**COVERAGE – EMPLOYEE BENEFITS LIABILITY**

    **1. Insuring Agreement**

        a. We will pay those sums that the insured becomes legally obligated to pay as damages because of any act, error or omission, of the insured, or of any other person for whose acts the insured is legally liable, to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply. We may, at our discretion, investigate any report of an act, error or omission and settle any "claim" or "suit" that may result. But:

            (1) The amount we will pay for damages is limited as described in Paragraph D. (Section III – Limits Of Insurance); and

            (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

        No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

        b. This insurance applies to damages only if:

            (1) The act, error or omission, is negligently committed in the "administration" of your "employee benefit program";

            (2) The act, error or omission, did not take place before the Retroactive Date, if any, shown in the Schedule nor after the end of the policy period; and

            (3) A "claim" for damages, because of an act, error or omission, is first made against any insured, in accordance with Paragraph c. below, during the policy period or an Extended Reporting Period we provide under Paragraph F. of this endorsement.

        c. A "claim" seeking damages will be deemed to have been made at the earlier of the following times:

            (1) When notice of such "claim" is received and recorded by any insured or by us, whichever comes first; or

            (2) When we make settlement in accordance with Paragraph a. above.

Case 1:23-cv-00451-WCG     Filed 04/06/23     Page 27 of 83     Document 1-1

A "claim" received and recorded by the insured within 60 days after the end of the policy period will be considered to have been received within the policy period, if no subsequent policy is available to cover the claim.

d. All "claims" for damages made by an "employee" because of any act, error or omission, or a series of related acts, errors or omissions, including damages claimed by such "employee's" dependents and beneficiaries, will be deemed to have been made at the time the first of those "claims" is made against any insured.

## 2. Exclusions

This insurance does not apply to:

### a. Dishonest, Fraudulent, Criminal Or Malicious Act

Damages arising out of any intentional, dishonest, fraudulent, criminal or malicious act, error or omission, committed by any insured, including the willful or reckless violation of any statute.

### b. Bodily Injury, Property Damage, Or Personal And Advertising Injury

"Bodily injury", "property damage" or "personal and advertising injury".

### c. Failure To Perform A Contract

Damages arising out of failure of performance of contract by any insurer.

### d. Insufficiency Of Funds

Damages arising out of an insufficiency of funds to meet any obligations under any plan included in the "employee benefit program".

### e. Inadequacy Of Performance Of Investment/Advice Given With Respect To Participation

Any "claim" based upon:

(1) Failure of any investment to perform;

(2) Errors in providing information on past performance of investment vehicles; or

(3) Advice given to any person with respect to that person's decision to participate or not to participate in any plan included in the "employee benefit program".

### f. Workers' Compensation And Similar Laws

Any "claim" arising out of your failure to comply with the mandatory provisions of any workers' compensation, unemployment compensation insurance, social security or disability benefits law or any similar law.

### g. ERISA

Damages for which any insured is liable because of liability imposed on a fiduciary by the Employee Retirement Income Security Act of 1974, as now or hereafter amended, or by any similar federal, state or local laws.

### h. Available Benefits

Any "claim" for benefits to the extent that such benefits are available, with reasonable effort and cooperation of the insured, from the applicable funds accrued or other collectible insurance.

### i. Taxes, Fines Or Penalties

Taxes, fines or penalties, including those imposed under the Internal Revenue Code or any similar state or local law.

### j. Employment-Related Practices

Damages arising out of wrongful termination of employment, discrimination, or other employment-related practices.

B. For the purposes of the coverage provided by this endorsement:

1. All references to Supplementary Payments – Coverages A and B are replaced by Supplementary Payments – Coverages A, B and Employee Benefits Liability.

2. Paragraphs 1.b. and 2. of the Supplementary Payments provision do not apply.

C. For the purposes of the coverage provided by this endorsement, Paragraphs 2. and 3. of Section II –Who Is An Insured are replaced by the following:

**CG 04 35 12 07**                                                                                           **2**

2. Each of the following is also an insured:

    a. Each of your "employees" who is or was authorized to administer your "employee benefit program".

    b. Any persons, organizations or "employees" having proper temporary authorization to administer your "employee benefit program" if you die, but only until your legal representative is appointed.

    c. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Endorsement.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if no other similar insurance applies to that organization. However:

    a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier.

    b. Coverage under this provision does not apply to any act, error or omission that was committed before you acquired or formed the organization.

D. For the purposes of the coverage provided by this endorsement, Section III – Limits Of Insurance is replaced by the following:

**1. Limits Of Insurance**

    a. The Limits of Insurance shown in the Schedule and the rules below fix the most we will pay regardless of the number of:

        (1) Insureds;

        (2) "Claims" made or "suits" brought;

        (3) Persons or organizations making "claims" or bringing "suits";

        (4) Acts, errors or omissions; or

        (5) Benefits included in your "employee benefit program".

    b. The Aggregate Limit is the most we will pay for all damages because of acts, errors or omissions negligently committed in the "administration" of your "employee benefit program".

    c. Subject to the Aggregate Limit, the Each Employee Limit is the most we will pay for all damages sustained by any one "employee", including damages sustained by such "employee's" dependents and beneficiaries, as a result of:

        (1) An act, error or omission; or

        (2) A series of related acts, errors or omissions

    negligently committed in the "administration" of your "employee benefit program".

    However, the amount paid under this endorsement shall not exceed, and will be subject to, the limits and restrictions that apply to the payment of benefits in any plan included in the "employee benefit program".

The Limits of Insurance of this endorsement apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations of the policy to which this endorsement is attached, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits Of Insurance.

**2. Deductible**

    a. Our obligation to pay damages on behalf of the insured applies only to the amount of damages in excess of the deductible amount stated in the Schedule as applicable to Each Employee. The limits of insurance shall not be reduced by the amount of this deductible.

    b. The deductible amount stated in the Schedule applies to all damages sustained by any one "employee", including such "employee's" dependents and beneficiaries, because of all acts, errors or omissions to which this insurance applies.

    c. The terms of this insurance, including those with respect to:

        (1) Our right and duty to defend any "suits" seeking those damages; and

        (2) Your duties, and the duties of any other involved insured, in the event of an act, error or omission, or "claim"

**CG 04 35 12 07**        **3**

apply irrespective of the application of the deductible amount.

d. We may pay any part or all of the deductible amount to effect settlement of any "claim" or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as we have paid.

E. For the purposes of the coverage provided by this endorsement, Conditions 2. and 4. of Section IV – Commercial General Liability Conditions are replaced by the following:

**2. Duties In The Event Of An Act, Error Or Omission, Or "Claim" Or "Suit"**

a. You must see to it that we are notified as soon as practicable of an act, error or omission which may result in a "claim". To the extent possible, notice should include:

(1) What the act, error or omission was and when it occurred; and

(2) The names and addresses of anyone who may suffer damages as a result of the act, error or omission.

b. If a "claim" is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the "claim" or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the "claim" or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the "claim" or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of an act, error or omission to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation or incur any expense without our consent.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under this endorsement, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

(1) This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis that is effective prior to the beginning of the policy period shown in the Schedule of this insurance and that applies to an act, error or omission on other than a claims-made basis, if:

(a) No Retroactive Date is shown in the Schedule of this insurance; or

(b) The other insurance has a policy period which continues after the Retroactive Date shown in the Schedule of this insurance.

(2) When this insurance is excess, we will have no duty to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

(3) When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of the total amount that all such other insurance would pay for the loss in absence of this insurance; and the total of all deductible and self-insured amounts under all that other insurance.

(4) We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Schedule of this endorsement.

**c. Method Of Sharing**

CG 04 35 12 07                                                                                                          4

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limits of insurance to the total applicable limits of insurance of all insurers.

F. For the purposes of the coverage provided by this endorsement, the following Extended Reporting Period provisions are added, or, if this endorsement is attached to a claims-made Coverage Part, replaces any similar Section in that Coverage Part:

**EXTENDED REPORTING PERIOD**

1. You will have the right to purchase an Extended Reporting Period, as described below, if:

    a. This endorsement is canceled or not renewed; or

    b. We renew or replace this endorsement with insurance that:

        (1) Has a Retroactive Date later than the date shown in the Schedule of this endorsement; or

        (2) Does not apply to an act, error or omission on a claims-made basis.

2. The Extended Reporting Period does not extend the policy period or change the scope of coverage provided. It applies only to "claims" for acts, errors or omissions that were first committed before the end of the policy period but not before the Retroactive Date, if any, shown in the Schedule. Once in effect, the Extended Reporting Period may not be canceled.

3. An Extended Reporting Period of five years is available, but only by an endorsement and for an extra charge.

    You must give us a written request for the endorsement within 60 days after the end of the policy period. The Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

    We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

    a. The "employee benefit programs" insured;

    b. Previous types and amounts of insurance;

    c. Limits of insurance available under this endorsement for future payment of damages; and

    d. Other related factors.

    The additional premium will not exceed 100% of the annual premium for this endorsement.

    The Extended Reporting Period endorsement applicable to this coverage shall set forth the terms, not inconsistent with this Section, applicable to the Extended Reporting Period, including a provision to the effect that the insurance afforded for "claims" first received during such period is excess over any other valid and collectible insurance available under policies in force after the Extended Reporting Period starts.

4. If the Extended Reporting Period is in effect, we will provide an extended reporting period aggregate limit of insurance described below, but only for claims first received and recorded during the Extended Reporting Period.

    The extended reporting period aggregate limit of insurance will be equal to the dollar amount shown in the Schedule of this endorsement under Limits of Insurance.

    Paragraph **D.1.b.** of this endorsement will be amended accordingly. The Each Employee Limit shown in the Schedule will then continue to apply as set forth in Paragraph **D.1.c.**

G. For the purposes of the coverage provided by this endorsement, the following definitions are added to the Definitions Section:

1. "Administration" means:

    a. Providing information to "employees", including their dependents and beneficiaries, with respect to eligibility for or scope of "employee benefit programs";

    b. Handling records in connection with the "employee benefit program"; or

    c. Effecting, continuing or terminating any "employee's" participation in any benefit included in the "employee benefit program".

CG 04 35 12 07                                                                                                                    5

However, "administration" does not include handling payroll deductions.

2. "Cafeteria plans" means plans authorized by applicable law to allow employees to elect to pay for certain benefits with pre-tax dollars.

3. "Claim" means any demand, or "suit", made by an "employee" or an "employee's" dependents and beneficiaries, for damages as the result of an act, error or omission.

4. "Employee benefit program" means a program providing some or all of the following benefits to "employees", whether provided through a "cafeteria plan" or otherwise:

a. Group life insurance, group accident or health insurance, dental, vision and hearing plans, and flexible spending accounts, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to those "employees" who satisfy the plan's eligibility requirements;

b. Profit sharing plans, employee savings plans, employee stock ownership plans, pension plans and stock subscription plans, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to all "employees" who are eligible under the plan for such benefits;

c. Unemployment insurance, social security benefits, workers' compensation and disability benefits;

d. Vacation plans, including buy and sell programs; leave of absence programs, including military, maternity, family, and civil leave; tuition assistance plans; transportation and health club subsidies; and

e. Any other similar benefits designated in the Schedule or added thereto by endorsement.

H. For the purposes of the coverage provided by this endorsement, Definitions 5. and 18. in the Definitions Section are replaced by the following:

5. "Employee" means a person actively employed, formerly employed, on leave of absence or disabled, or retired. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

18. "Suit" means a civil proceeding in which damages because of an act, error or omission to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

Case 1:23-cv-00451-WCG    Filed 04/06/23    Page 32 of 83    Document 1-1

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s): | Location(s) Of Covered Operations |
|---|---|
| Any person(s) or organization(s) whom the Named Insured agrees, in a written contract, to name as an Additional insured.  However, this status exists only for the project specified in that contract. | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

A. Section II – Who Is An Insured is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

 1. Your acts or omissions; or

 2. The acts or omissions of those acting on your behalf;

 in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

B. With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

 This insurance does not apply to "bodily injury" or "property damage" occurring after:

 1. All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

 2. That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s): | Location And Description Of Completed Operations |
|---|---|
| Any person(s) or organization(s) whom the Named Insured agrees, in a written contract, to name as an additional insured.  However, this status exists only for the project specified in that contract. | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work" at the location designated and described in the schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard".

**CG 20 37 07 04**

**© ISO Properties, Inc., 2004**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

   **(a)** Refusal to employ that person;

   **(b)** Termination of that person's employment; or

   **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

   **(a)** Refusal to employ that person;

   **(b)** Termination of that person's employment; or

   **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Copyright, Insurance Services Office, Inc., 1997

Case 1:23-cv-00451-WCG   Filed 04/06/23   Page 35 of 83   Document 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – EXTERIOR INSULATION AND FINISH SYSTEMS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:

**1.** The design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or repair, including remodeling, service, correction or replacement, of any "exterior insulation and finish system" or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system; or

**2.** "Your product" or "your work" with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system", or any substantially similar system, is used on the part of that structure containing that component, fixture or feature.

**B.** The following definition is added to the **Definitions** Section:

"Exterior insulation and finish system" means a non-load bearing exterior cladding or finish system, and all component parts therein, used on any part of any structure, and consisting of:

**1.** A rigid or semi-rigid insulation board made of expanded polystyrene and other materials;

**2.** The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;

**3.** A reinforced or unreinforced base coat;

**4.** A finish coat providing surface texture to which color may be added; and

**5.** Any flashing, caulking or sealant used with the system for any purpose.

© ISO Properties, Inc., 2003

Case 1:23-cv-00451-WCG    Filed 04/06/23    Page 36 of 83    Document 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**SCHEDULE**

**Name of Person or Organization:**

Any person(s) or organization(s) whom the Named Insured agrees, in a written contract, to provide a waiver of subrogation.

However, this status exists only for the project specified in that contract.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement).

The TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US Condition (Section **IV** – COMMERCIAL GENERAL LIABILITY CONDITIONS) is amended by the addition of the following:

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule above.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – TESTING OR CONSULTING ERRORS AND OMISSIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions** of **Section I** – **Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions** of **Section I** – **Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:

**1.** An error, omission, defect or deficiency in:

    **a.** Any test performed; or

    **b.** An evaluation, a consultation or advice given,

    by or on behalf of any insured;

**2.** The reporting of or reliance upon any such test, evaluation, consultation or advice; or

**3.** An error, omission, defect or deficiency in experimental data or the insured's interpretation of that data.

Copyright, Insurance Services Office, Inc., 1997

Case 1:23-cv-00451-WCG   Filed 04/06/23   Page 38 of 83   Document 1

# Contractors Pollution Liability

PLEASE READ THE ENTIRE POLICY CAREFULLY.

VARIOUS PROVISIONS OF THE POLICY RESTRICT OR EXCLUDE COVERAGE.

Various provisions in this policy restrict coverage.  Read the entire policy carefully to determine YOUR rights, duties and what is and is not covered.  Throughout this policy the words YOU and YOUR refer to the NAMED INSURED shown in the Declarations and any other INSURED under this policy.  The word INSURED(S) means any person(s) or organization(s) qualifying as such under SECTION II.  The words WE, US, and OUR refer to the Company providing this insurance. In addition to the above, words and phrases that appear in capital letters have special meanings and are defined in SECTION II - DEFINITIONS.

Words and phrases that appear in capital letters have special meanings and are defined in SECTION II - DEFINITIONS.

In consideration of the premium charged, the undertaking of the NAMED INSURED to pay the Deductible, and in reliance upon the statements in the application, and subject to the Limits of Liability of this insurance as set forth in the Declarations, and the Exclusions, Conditions and other terms of this Policy, WE agree with YOU as follows:

## I.    INSURING AGREEMENT

We will pay on YOUR behalf all sums in excess of the Deductible that YOU are legally obligated to pay as a result of a CLAIM for BODILY INJURY or PROPERTY DAMAGE caused by a POLLUTION EVENT resulting from COVERED OPERATIONS, provided that:

(1)     Such BODILY INJURY or PROPERTY DAMAGE occurs during the POLICY PERIOD;

(2)     Progressive, indivisible BODILY INJURY or PROPERTY DAMAGE over a period of days, weeks, months or longer caused by the same, continuous, repeated, or related POLLUTION EVENT shall be deemed to have occurred only on the date of first exposure to such POLLUTION EVENT;

(3)     If the date of the first exposure is before the inception date of the first Contractors Pollution Liability Policy issued to YOU by US, or the date of the first exposure cannot be determined, but the progressive, indivisible BODILY INJURY or PROPERTY DAMAGE continues to exist during the POLICY PERIOD, it will be deemed to have occurred only on the inception date of the first Contractors Pollution Liability Policy issued to YOU by US which is applicable to the COVERED OPERATIONS from which such POLLUTION EVENT resulted.

WE shall have the right and duty to assume the adjustment, defense and settlement of any CLAIM to which this insurance applies.

Our duty to adjust, defend and settle all CLAIMS to which this insurance applies ends when the applicable Limits of Liability have been tendered into court or exhausted by payment of LOSSES or CLAIM EXPENSES.

## II. DEFINITIONS

A. AUTOMOBILE means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any machinery or apparatus attached thereto.

B. BODILY INJURY means physical injury, sickness, or disease, sustained by any person including death resulting therefrom and including mental anguish or emotional distress when accompanied by physical injury.

C. CLAIM or CLAIMS means any demand received by YOU alleging liability or responsibility on YOUR part for LOSSES because of a POLLUTION EVENT resulting from COVERED OPERATIONS.

D. CLAIM EXPENSES means:

1. fees charged by an attorney designated by US, or by YOU with OUR written consent, and

2. all other fees, costs and expenses resulting from the investigation, adjustment, defense of a CLAIM, and the premiums for appeal, attachment or similar bonds; and

3. interest on the full amount of any judgment that accrues after entry of the judgment and before WE have paid, offered to pay, or deposited in court the amount available for the judgment under this policy;

4. allowable expenses of $500 per day but no more than $5,000 in total for the compensation to YOUR principals, directors, officers or employees for personally attending any legal proceeding at OUR request. These allowable expenses shall not be applied towards reducing the applicable Deductible amount and are in addition to the Limits of Liability.

CLAIM EXPENSES do not include salaries or expenses of OUR regular employees or fees and expenses of independent adjusters retained by US.

E. CLEANUP COSTS means the necessary expenses incurred in the investigation, removal and remediation (including the associated monitoring, neutralization, immobilization or disposal) of contaminated soil, surface water, groundwater, or other contamination.

F. COVERED OPERATIONS means those activities performed by YOU or any entity for whom you are legally responsible at a job site.

G. INSURED means:

1. the NAMED INSURED;

2. YOUR current or former principals, partners, executive officers, directors, stockholders or trustees while acting on YOUR behalf and within the scope of their duties as such;

3.     YOUR current or former employees including leased personnel under YOUR supervision, but only for acts within the scope of their employment or lease agreement;

4.     YOUR heirs, executors, administrators, assigns and legal representatives in the event of death, incapacity or bankruptcy, but solely with respect to the liability insured herein;

5.     a retired principal, partner, officer, director or employee while acting within their duties as a consultant for YOU;

6.     a client for whom the NAMED INSURED performs or performed COVERED OPERATIONS, provided that a written contract or agreement is in effect between the NAMED INSURED and the client.  However, such clients are covered solely with respect to LOSS arising from COVERED OPERATIONS and are not covered for any LOSS arising from the client's own liability.  Clients of the NAMED INSURED are covered only for Limits of Liability up to and not exceeding the amount required by the written contract with the NAMED INSURED and subject to the Limits of Liability of this Policy.

H.     INSURED CONTRACT means any written contract or agreement under which YOU assume the tort liability of another party to pay for BODILY INJURY or PROPERTY DAMAGE.  Tort liability means a liability that would have existed by law in the absence of any contract or agreement.  INSURED CONTRACT includes any obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality.

I.     LOSS means:

1.     monetary judgments, awards or settlements of compensatory damages arising from BODILY INJURY and PROPERTY DAMAGE;

2.     related CLAIM EXPENSES.

However, LOSS does not include fines or penalties assessed against YOU; or exemplary damages including but not limited to punitive, multiple or treble damages.

J.     MEDIATION means formal non-binding intervention by a neutral third party.

K.     NAMED INSURED means the person or entity designated in the Declarations.

L.     NATURAL RESOURCE DAMAGES means the sum of:

1.     reasonable direct costs, including costs of assessment, associated with action necessary to restore (including replacement) the natural resource to its baseline condition prior to the POLLUTION EVENT, and

2.     the USE VALUE of injury to or destruction of natural resources, including the land, surface water, groundwater, subsurface strata, air, fish, wildlife, or biota

between the time of a POLLUTION EVENT and restoration of the natural resources injured by the POLLUTION EVENT.

M.      POLICY PERIOD means the period set forth in the Declarations, or any shorter period resulting from a termination of this policy.

N.      POLLUTION EVENT means the discharge, dispersal, migration, seepage, release, or escape of any solid, liquid, gaseous or thermal irritant, contaminant or pollutant including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste, provided such conditions are not naturally present in the environment in the concentration or amounts discovered.

O.      PROPERTY DAMAGE means:

    1.      physical injury to or destruction of tangible property including the resulting loss of use thereof;

    2.      loss of use of tangible property that has not been physically injured or destroyed;

    3.      CLEANUP COSTS; and

    4.      NATURAL RESOURCE DAMAGE.

P.      USE VALUE means the value of the natural resources to the public attributable to the direct use of the services provided by the natural resources.

## III.    EXCLUSIONS

This policy does not apply to any CLAIMS, CLAIM EXPENSES or LOSSES resulting from or arising out of**:**

A.      a CLAIM made by any INSURED against any other INSURED.  However, this exclusion shall not apply to a CLAIM by any INSURED who is a client for whom the INSURED or any entity for whom YOU are legally liable is performing or has performed COVERED OPERATIONS;

B.      a CLAIM by any individual or business enterprise or its subrogees or assignees; (1) that wholly or partially owns, operates or manages YOU; or (2) in which YOU have an ownership interest in excess of 25 percent; or (3) that is controlled, operated or managed by YOU;

C.      any obligation for which YOU or any carrier as YOUR Insurer may be liable under any workers' compensation, unemployment compensation, employers liability, disability benefits law or under any similar law;

D.      liability assumed by YOU under any oral or written contract or agreement except that this exclusion shall not apply to :

    1.      any CLAIM where legal liability exists in the absence of such contract or agreement.

2.   liability for LOSS assumed in a contract or agreement that is an INSURED CONTRACT, provided that the POLLUTION EVENT resulting from COVERED OPERATIONS occurs subsequent to the execution of such contract;

E.   the cost to repair or replace faulty construction workmanship YOU perform on any construction, erection, fabrication, installation, assembly or manufacturing process, including materials, parts or equipment furnished in connection therewith;

F.   a POLLUTION EVENT existing prior to the inception date of the policy known to YOU or any of YOUR principals, partners, directors, or officers, or any of YOUR employees with responsibility for environmental affairs, legal affairs or risk management, and which could reasonably be expected to give rise to a CLAIM;

G.   any dishonest, fraudulent, or malicious act, error or omission, or those of a knowingly wrongful nature or the intentional, willful or deliberate non-compliance with any statute, regulation, ordinance, administrative complaint, notice of violation, notice letter, executive order, or instruction of any governmental agency or body by or at YOUR direction except that this exclusion will not apply to any INSURED who did not commit, participate in, or have knowledge of any of the acts described;

H.   the ownership, entrustment, maintenance, use, operation, loading or unloading of any AUTOMOBILE, aircraft, vessel or rolling stock beyond the boundaries of the site at which the COVERED OPERATIONS are being conducted unless endorsed onto this policy;

I.   waste, contaminants, pollutants, or materials transported via AUTOMOBILE, aircraft, vessel, watercraft or railroad rolling stock beyond the boundaries of the site at which YOU are performing COVERED OPERATIONS for YOUR client;

J.   real property, facilities or personal property owned, leased, or rented by YOU;

L.   a claim resulting from or arising out of professional services rendered or that should have been rendered by YOU or any entity for whom YOU are legally responsible, including but not limited to recommendations, opinions, and strategies rendered for architectural, consulting, design and engineering services, such as drawings, maps, reports, surveys, change orders, plan specifications, assessment services, remedy selections, or inspection service.

## IV.   LIMITS OF LIABILITY AND DEDUCTIBLE

A.   Each Claim Limit of Liability

OUR liability for LOSS for each CLAIM arising from the same, continuous, repeated or related POLLUTION EVENT shall not exceed the amount stated in the Declarations as the Each CLAIM Limit of Liability.

B.   Aggregate Limit of Liability Each Policy Period

OUR liability as a result of all CLAIMS for LOSSES shall not exceed the amount stated in the Declarations as Aggregate Limit of Liability Each POLICY PERIOD.

C.  Each Claim Expense Limit of Liability

OUR liability for CLAIM EXPENSES for each CLAIM arising from the same, continuous, repeated or related POLLUTION EVENT shall not exceed the amount stated in the Declarations as the Each CLAIM EXPENSE Limit of Liability.

D.  Aggregate Claims Expense Limit of Liability Each Policy Period

OUR liability as a result of all CLAIM EXPENSES shall not exceed the amount stated in the Declarations as Aggregate CLAIM EXPENSES Limit of Liability Each POLICY PERIOD.

E.  Deductible

As a condition precedent to OUR liability under this Policy, the Deductible amount as stated in the Declarations shall be paid by YOU and shall be applicable to each CLAIM and shall include all LOSSES and CLAIM EXPENSES up to the Deductible amount for each CLAIM.

YOUR total Deductible payments, in respect to each CLAIM shall not exceed the Deductible amount stated in the Declarations. WE may from time to time advance payments for LOSSES and CLAIM EXPENSES within the Deductible. Any amounts first paid by US within the Deductible shall, upon written demand by US, be paid by YOU to US within thirty (30) days.

D.  Multiple Insureds, Claims and Claimants

The Limits of Liability shown in the Declarations and described herein are the most WE will pay, regardless of the number of INSUREDS, CLAIMS, or individuals or entities making CLAIMS.  One or more CLAIMS arising out of a single POLLUTION EVENT or out of a series of related POLLUTION EVENTS shall be treated as a single CLAIM, and shall be subject to the Each CLAIM Limit of Liability and only one Deductible.

If the same, continuous, repeated or related POLLUTION EVENT results in BODILY INJURY or PROPERTY DAMAGE which occurs during POLICY PERIODS of different Contractors Pollution Liability Policies issued to YOU by US, all such BODILY INJURY or PROPERTY DAMAGE shall be deemed to have occurred only during the POLICY PERIOD of the first Contractors Pollution Liability Policy in which any BODILY INJURY or PROPERTY DAMAGE occurred.

E.  MEDIATION

If WE and YOU agree to use MEDIATION to resolve a CLAIM brought against YOU and if such CLAIM is resolved thereby, the Deductible stated in the Declarations shall be reduced by 50% for such CLAIM subject to a maximum reduction of $25,000.

**V.  CLAIM PROVISIONS**

A.  Notice of CLAIM

In the event of a CLAIM, YOU shall provide to US prompt written notice containing particulars sufficient to identify YOU or any INSURED involved and reasonably obtainable information with respect to time, place and circumstances, and the names and addresses of any injured parties and of available witnesses. YOU further agree to send US copies of all demands or legal documents as soon as possible. YOUR knowledge of CLAIM shall be deemed to have occurred when a principal, partner, director, or executive officer first learned of the CLAIM.

All CLAIMS are to be reported to:

See Notice to Policyholder AXIS 001 0918

B. No costs, charges or related CLAIM EXPENSES shall be incurred without OUR written consent which shall not be unreasonably withheld.

WE shall have the right and the duty to designate legal counsel for the investigation, defense or settlement of a CLAIM. WE will not settle or compromise any CLAIM without YOUR consent. YOU shall do nothing to prejudice OUR rights under this policy nor shall YOU admit liability or settle any CLAIM without OUR written consent. If YOU refuse to consent to any settlement or compromise recommended by US involving any part of OUR limits of liability and acceptable to the claimant, and YOU elect to contest the CLAIM, suit or proceeding, then OUR liability shall not exceed the amount which WE would have paid for LOSSES and CLAIM EXPENSES at the time the CLAIM or suit or proceeding could have been settled or compromised.

C. YOU shall assist and cooperate with US in the investigation, settlement and defense of all CLAIMS made against YOU and upon OUR request shall authorize the release of records and other information, secure and give evidence, attend hearings and trials and obtain the location of and cooperation of witnesses. Any expenses YOU incur resulting from such cooperation are not considered CLAIMS EXPENSES, and are thus not recoverable under this policy or chargeable against YOUR Deductible.

D. In the event that YOU are entitled by law to select independent counsel to defend YOU at the Company's expense and YOU elect to select such counsel, the attorney's fees and all other litigation expenses WE must pay to that counsel are limited to the rates WE actually pay to counsel WE retain in the ordinary course of business in the defense of similar CLAIMS in the community where the CLAIM arose or is being defended.

Additionally, WE may exercise the right to require that such counsel have certain minimum qualifications with respect to their legal competency including experience in defending CLAIMS similar to the one pending against YOU and to require such counsel

Case 1:23-cv-00451-WCG     Filed 04/06/23     Page 45 of 83     Document 1-1

to have errors and omissions insurance coverage. As respects any such counsel, YOU agree to require YOUR counsel to, in a timely manner, provide US with information regarding the CLAIM and to respond to OUR request for information regarding the CLAIM.

YOU may at anytime, by YOUR signed consent, freely and fully waive YOUR right to select independent counsel.

## VI.  CONDITIONS

### A.  Action Against US

No action shall lie against US unless, as a condition precedent thereto, there shall have been full compliance with all of the terms and conditions of this policy, and both YOUR liability and the amount of YOUR obligations to pay has been finally determined either by judgment against YOU after an actual trial or by YOUR written agreement with the claimant or the claimant's legal representative with OUR approval.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join US as a party to any action against YOU to determine YOUR liability, nor shall WE be impleaded by YOU or YOUR legal representative.

### B.  Assignment

Assignment of interest under this policy shall not bind US without OUR express written consent.

### C.  Audit And Inspection

Solely for OUR benefit, WE shall be permitted but not obligated to inspect, sample and monitor on a continuing basis the INSURED's property or operations at any time. OUR audit or inspection of YOU shall not constitute an undertaking on behalf of the INSURED or others to determine or warrant that property or operations are safe or conform to acceptable engineering practice or are in compliance with any law, rule, or regulation.

### D.  Bankruptcy or Insolvency

YOUR bankruptcy or insolvency shall not relieve US of OUR obligations under this policy.

### E.  Cancellation and Nonrenewal

1.  Cancellation by YOU

    YOU may cancel this policy by surrender thereof to US or any of OUR authorized representatives or by mailing to US written notice stating when thereafter such cancellation shall be effective.

If YOU cancel this policy, WE shall retain the customary short rate proportion of the premium.

2.    Cancellation by US

    a.    If this policy has been in effect less than sixty (60) days and is not a renewal of a policy issued by US, WE may cancel this policy for any reason.

    b.    If this policy has been in effect for sixty (60) days or more or is a renewal of a policy issued by US, this policy may not be canceled except for one or more of the following reasons:

        (1)    Nonpayment of premium or Deductible when due;

        (2)    Fraud or material misrepresentation affecting the policy;

        (3)    Violation of any of the terms or conditions of the policy;

        (4)    Loss of reinsurance; or

        (5)    Material change in the risk.

    c.    Written notice of cancellation shall be mailed or delivered by US to YOU at least:

        (1)    Fifteen (15) days prior to the effective date of cancellation, if this policy is canceled for nonpayment of premium; or

        (2)    Sixty (60) days prior to the effective date of cancellation, if this policy is canceled for any other reason.

    d.    Delivery shall be considered to be equivalent to mailing. Proof of mailing shall be considered to be proof of notice.

    e.    If this policy is canceled by US, the earned premium shall be computed pro rata.

3.    Nonrenewal

If WE elect not to renew this policy WE will mail a written notice at least sixty (60) days prior to expiration, unless the reason for nonrenewal is nonpayment of premium or YOUR deductible obligations or if YOU failed to comply with any other term or condition.  Proof of mailing shall be considered to be proof of notice.

**F.    Changes**

The terms and conditions of this policy may only be altered by an endorsement issued by US.

**G.    Choice of Law and Jurisdiction**

If a dispute arises over the meaning, interpretation or operation of any term, condition, definition or provision of this policy, YOU and WE agree that the substantive law of the State of New York shall apply regardless of the choice of law or conflicts of law principles.

In the event that YOU and WE agree to resolve the dispute by arbitration, the Commercial Arbitration rules of the American Arbitration Association shall apply.

**H.    Other Insurance**

1.    The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance.  When this insurance is primary and YOU have other insurance which is stated to be applicable to the loss on an excess basis, the amount of OUR liability under this policy shall not be reduced by the existence of such insurance.

2.    When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess, or contingent, WE shall not be liable under this policy for a greater proportion of the loss than that stated in the Declarations or the following contribution provision; whichever is lower:

Contribution by Equal Shares - If all of such other valid and collectible insurance provides for contribution by equal shares, WE will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

Contribution by Limits - If any of the other insurance does not permit contribution by equal shares, WE will contribute by limits.  Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**I.    Representations**

By acceptance of this policy, YOU agree that the statements in the application and its attachments are YOUR agreements and representations, that this policy is issued in reliance upon the truth of such representations, and that this policy, its Declarations and endorsements embody all agreements existing between YOU and US relating to this insurance.

**J.    Separation of Insureds**

Except with respect to the Limits of Liability, and any rights or duties specifically assigned to YOU, this insurance applies:

As if each Named INSURED were the only Named INSURED; and

Separately to each INSURED against whom a CLAIM is made.

Page 10 of 11

Misrepresentation, concealment, breach of contract or violation of any duty under this policy by one INSURED shall not prejudice the interest of coverage of another INSURED under this policy.

**K.    Sole Agent**

The first NAMED INSURED shall act on behalf of all INSUREDS for all purposes, including but not limited to the payment or return of premium, receipt and acceptance of any endorsement issued to form a part of this policy, complying with all applicable CLAIMS provision, giving and receiving notice of cancellation or nonrenewal, and reimbursement to US of any Deductible advanced.

**L.    Subrogation**

In the event of any payment under this policy, WE shall be subrogated to all YOUR rights of recovery against any person or organization and YOU shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights.  YOU shall do nothing to prejudice such rights.

WE shall not exercise any such right against any persons, firms or corporations included in the definition of an INSURED or against YOUR clients if prior to the CLAIM, a waiver of subrogation was so required and accepted under a specific contractual undertaking by YOU.

All recoveries obtained through subrogation shall be applied equally towards YOUR Deductible and OUR costs with any remaining balance payable to US.

**M.    Policy Territory**

The insurance afforded by this policy applies worldwide.  Where suits are brought or CLAIMS are made outside of the United States of America and its territories and possessions, Puerto Rico, or Canada, the following additional provisions apply:

1.    WE shall have the right but not the duty to investigate, defend or settle any such CLAIMS brought against an INSURED;

2.    If WE elect not to investigate, defend or settle any such CLAIM, the INSURED shall, under OUR supervision, arrange for such investigation and defense thereof as is reasonably necessary and subject to OUR prior authorization, shall effect such settlement thereof as WE and an INSURED deem expedient;

3.    WE will reimburse the INSURED for the reasonable cost of such investigation and defense and the amount of any settlement or judgment in excess of the Deductible amount stated in the Declarations, all subject to and within the Limits of Liability stated in the Declarations; and

4.    Such reimbursement shall be made in United States currency at the rate of exchange prevailing on the date the judgment is rendered or the date that the amount of the settlement is agreed upon or the date expenditure is made.

Professional Liability Policy

THIS POLICY PROVIDES CLAIMS-MADE AND REPORTED COVERAGE

CLAIMS MUST FIRST BE MADE AGAINST THE INSURED AND REPORTED TO THE COMPANY DURING THE POLICY PERIOD UNLESS AN EXTENDED REPORTING PERIOD APPLIES. THE PAYMENT OF CLAIM EXPENSES REDUCES THE LIMITS OF INSURANCE.

PLEASE READ THE ENTIRE POLICY CAREFULLY

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine YOUR rights, duties and what is and is not covered. Throughout this policy the words YOU and YOUR refer to the NAMED INSURED shown in the Declarations and any other INSURED under this policy. The words WE, US, and OUR refer to the Company providing this insurance. The word INSUREDS means any persons or organizations qualifying as such under SECTION II.

Words and phrases that appear in capital letters have special meanings and are defined in SECTION II - DEFINITIONS.

In consideration of the premium charged, the undertaking of the NAMED INSURED to pay the Deductible, and in reliance upon the statements in the application, and subject to the Limits of Liability of this insurance as set forth in the Declarations, and the Exclusions, Conditions and other terms of this Policy, WE agree with YOU as follows:

**I. INSURING AGREEMENTS**

WE will pay on YOUR behalf all DAMAGES that YOU are legally obligated to pay as a result of CLAIMS provided that:

    (1)    the CLAIM was first made against YOU during the POLICY PERIOD and reported to US during the POLICY PERIOD or the Extended CLAIMS Reporting Period, if applicable;

    (2)    the CLAIM arises out of an actual or alleged WRONGFUL ACT with respect to PROFESSIONAL SERVICES rendered or that should have been rendered by YOU or any entity for whom YOU are legally liable, including your interest in joint ventures;

    (3)    the WRONGFUL ACT took place during the POLICY PERIOD or on or after the Retroactive Date and before the expiration of the POLICY PERIOD.

WE shall have the right and duty to assume the adjustment, defense and settlement of any CLAIM to which this insurance applies. Our duty to adjust, defend and settle all CLAIMS to which this insurance applies ends when the applicable Limits of Liability have been tendered into court or exhausted by payment of CLAIM EXPENSES or DAMAGES.

Notwithstanding the above, this insurance does not apply to CLAIMS, CLAIMS EXPENSES, or

Case 1:23-cv-00451-WCG    Filed 04/06/23    Page 50 of 83    Document 1-1

DAMAGES covered, in whole or in part, under any valid insurance policy in force prior to this policy.

## II. DEFINITIONS

A.     AUTOMOBILE means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any machinery or apparatus attached thereto.

B.     CLAIM or CLAIMS means any demand received by YOU alleging liability or responsibility on YOUR part for DAMAGES arising from PROFESSIONAL SERVICES.

C.     CLAIM EXPENSES means:
1.     fees charged by an attorney designated by US, or by YOU with OUR written consent, and
2.     all other fees, costs and expenses resulting from the investigation, adjustment, defense of a CLAIM, and the premiums for appeal, attachment or similar bonds; and
3.     interest on the full amount of any judgment that accrues after entry of the judgment and before WE have paid, offered to pay, or deposited in court the amount available for the judgment under this policy;
4.     allowable expenses of $500 per day but no more than $5,000 in total for the compensation to YOUR principals, directors, officers or employees for personally attending any legal proceeding at OUR request. These allowable expenses shall not be applied towards reducing the applicable Deductible amount and are in addition to the Limits of Liability.
CLAIM EXPENSES do not include salaries or expenses of OUR regular employees or fees and expenses of independent adjusters retained by US.

D.     DAMAGES means the monetary amounts for which YOU may be held liable, including sums paid as judgments, award, or settlements but does not include:
1.     the restitution, return, withdrawal or reduction of fees, profits or charges for services rendered or offered by YOU or any other consideration or expenses paid to YOU for services or goods; or
2.     judgments or awards deemed uninsurable by law; or
3.     fines and penalties assessed against YOU; or exemplary damages including but not limited to punitive, multiple or treble damages.

E.     INSURED means;
1.     the NAMED INSURED;
2.     YOUR current or former principals, partners, executive officers, directors, stockholders or trustees while acting on YOUR behalf and within the scope of their duties as such;
3.     YOUR current or former employees including leased personnel under YOUR supervision, but only for acts within the scope of their employment or lease agreement;

4. YOUR heirs, executors, administrators, assigns and legal representatives in the event of death, incapacity or bankruptcy, but solely with respect to the liability insured herein;

5. a retired principal, partner, officer, director or employee while acting within their duties as a consultant for YOU;

F. MEDIATION means any non-binding intervention by a neutral third party.

G. NAMED INSURED means the person or entity designated in the Declarations.

H. POLICY PERIOD means the period set forth in the Declarations, or any shorter period arising as a result of termination or cancellation of the policy.

I. PROFESSIONAL SERVICES means those architectural, engineering, consulting, project management, or construction management services that you perform for others for a fee.

J. RETROACTIVE DATE means the date on or after which any WRONGFUL ACT must have taken place in order to be considered for coverage under this policy, as stated in the Declarations. If none is shown, the RETROACTIVE DATE will be the effective date of the first policy issued by US to YOU.

K. WRONGFUL ACT means any act, error or omission committed by YOU in the performance of YOUR PROFESSIONAL SERVICES.

## III. EXCLUSIONS

This insurance does not apply to CLAIMS, CLAIM EXPENSES, or DAMAGES based upon or arising out of:

A. any dishonest, fraudulent, or malicious act, error or omission, or those of a knowingly wrongful nature or the intentional, willful or deliberate non-compliance with any statute, regulation, ordinance, administrative complaint, notice of violation, notice letter, executive order, or instruction of any governmental agency or body by or at YOUR direction except that this exclusion will not apply to an INSURED who did not commit, participate in, or have knowledge of any of the acts described;

B. a CLAIM made by an INSURED against any other INSURED;

C. a CLAIM by any individual or business enterprise or its subrogees or assignees; (1) that wholly or partially owns, operates or manages YOU; or (2) in which YOU have an ownership interest in excess of 25 percent; or (3) that is controlled, operated or managed by YOU;

D. actual or alleged wrongful termination or discrimination on any basis by YOU against any past or present employee, officer, or applicant for employment;

Case 1:23-cv-00451-WCG    Filed 04/06/23    Page 52 of 83    Document 1-1

E.   any obligation for which YOU or any carrier as YOUR Insurer may be liable under any workers' compensation, unemployment compensation, employers liability, disability benefits law or under any similar law;

F.   conduct by an individual, corporation, or partnership of which YOU are a partner, director, officer, member or employee, that is not designated in the Declarations or by Endorsement as a NAMED INSURED;

G.   the advising, requiring, obtaining or maintaining of any form of insurance, suretyship or bond, or the failure to do so;

H.   any express warranty or guarantee, except that this exclusion shall not apply to a CLAIM where legal liability exists in the absence of such warranty or guarantee and arises from YOUR WRONGFUL ACT or the WRONGFUL ACT of YOUR subconsultants in the rendering of or failure to render PROFESSIONAL SERVICES;

I.   liability of others assumed by YOU under any oral or written contract or agreement, including but not limited to hold harmless and indemnity agreements, agreements to defend others, and liquidated damages clauses, except that this exclusion shall not apply to a CLAIM where legal liability exists in the absence of such contract or agreement and arises from YOUR WRONGFUL ACT or the WRONGFUL ACT of YOUR subconsultants in the rendering of or failure to render PROFESSIONAL SERVICES;

J.   any project that is or has been insured under a project specific insurance policy whether or not such policy remains in force, except that this exclusion shall not apply where excess coverage has been specifically endorsed onto this policy for such project and YOUR liability is found to be excess of the limits of liability available under the project specific policy;

K.   an actual or alleged WRONGFUL ACT with respect to PROFESSIONAL SERVICES which occurred prior to the inception date of the policy known to any INSURED'S principal, partner, director, officer, agent or employee with responsibility for environmental affairs, legal affairs or risk management and which could reasonably be expected to give rise to a CLAIM.

**IV.   LIMITS OF LIABILITY AND DEDUCTIBLE**

A.   EACH CLAIM LIMIT OF LIABILITY
Our liability for Each Claim for DAMAGES shall not exceed the amount stated in the Declarations as the Each Claim Limit of Liability.

B.   AGGREGATE LIMIT OF LIABILITY
OUR liability as a result of all CLAIMS for DAMAGES shall not exceed the amount stated in the Declarations as the Aggregate Limit of Liability Each POLICY PERIOD and Optional Extended CLAIMS Reporting Period, if purchased.

C. EACH CLAIM EXPENSE LIMIT OF LIABILITY
Our liability for Each Claim for CLAIM EXPENSES shall not exceed the amount stated in the Declarations as the Each Claim Expense Limit of Liability.

D. AGGREGATE CLAIMS EXPENSE LIMIT OF LIABILITY
OUR liability as a result of all CLAIM EXPENSES shall not exceed the amount stated in the Declarations as the Aggregate Claims Expense Limit of Liability Each POLICY PERIOD and Optional Extended CLAIMS Reporting Period, if purchased.

E. DEDUCTIBLE
As a condition to OUR liability under this policy, the Deductible amount stated in the Declarations shall be paid by YOU and shall be applicable to each CLAIM and shall include all DAMAGES and CLAIM EXPENSES up to the Deductible amount for each CLAIM.

YOUR total Deductible payments, in respect to each CLAIM, shall not exceed the Deductible amount stated in the Declarations. We may from time to time advance payments for DAMAGES, LOSSES or CLAIM EXPENSES within the Deductible. ANY amounts first paid by US with the Deductible shall, upon written demand by US, be paid by YOU to US within thirty (30) days.

F. MULTIPLE INSUREDS, CLAIMS AND CLAIMANTS
The Limits of Liability stated in the Declarations and described herein are the most WE will pay, regardless of the number of INSUREDS, CLAIMS, or individuals or entities making CLAIMS. One or more CLAIMS arising out of a single WRONGFUL ACT or out of a series of related WRONGFUL ACTS shall be treated as a single CLAIM, and shall be subject to the Each CLAIM Limit of Liability and only one Deductible. All such CLAIMS, whenever made, shall be considered first made on the date on which the earliest CLAIM was first made.

G. MEDIATION
If YOU agree with US to use MEDIATION to resolve a CLAIM brought against YOU and if such CLAIM is resolved thereby, the Deductible stated in the Declarations shall be reduced by 50% for such CLAIM subject to a maximum reduction of $25,000.

## V. CLAIM PROVISIONS

A. Notice of CLAIM
In the event of a CLAIM, YOU shall provide to US prompt written notice containing particulars sufficient to identify YOU or any INSURED involved and reasonably obtainable information with respect to time, place and circumstances, and the names and addresses of any injured parties and of available witnesses. YOU further agree to send US copies of all demands or legal documents as soon as possible. Written notice must be provided to US no later than 60 days after the expiration or termination of the

Case 1:23-cv-00451-WCG    Filed 04/06/23    Page 54 of 83    Document 1-1

policy. YOUR knowledge of CLAIM shall be deemed to have occurred when a principal, partner, director, or executive officer first learned of the CLAIM.

All CLAIMS are to be reported to:

AXIS Insurance
Attn: Claims Department
11680 Great Oaks Way, Suite 500
Alpharetta, GA 30022
Fax:    866-770-5629
Email: 'usclaimnoticebh@axiscapital.com'

B.   No costs, charges or related CLAIM EXPENSES shall be incurred without OUR written consent which shall not be unreasonably withheld.

WE shall have the right and the duty to designate legal counsel for the investigation, defense or settlement of a CLAIM. WE will not settle or compromise any CLAIM without YOUR consent. YOU shall do nothing to prejudice OUR rights under this policy nor shall YOU admit liability or settle any CLAIM without OUR written consent. If YOU refuse to consent to any settlement or compromise recommended by US involving any part of OUR limits of liability and acceptable to the claimant, and YOU elect to contest the CLAIM, suit or proceeding, then OUR liability shall not exceed the amount which WE would have paid for LOSSES and CLAIM EXPENSES at the time the CLAIM or suit or proceeding could have been settled or compromised.

C.   YOU shall assist and cooperate with US in the investigation, settlement and defense of all CLAIMS made against YOU and upon OUR request shall authorize the release of records and other information, secure and give evidence, attend hearings and trials and obtain the location of and cooperation of witnesses. Any expenses YOU incur resulting from such cooperation are not considered CLAIMS EXPENSES, and are thus not recoverable under this policy or chargeable against YOUR Deductible.

D.   In the event that YOU are entitled by law to select independent counsel to defend YOU at the Company's expense and YOU elect to select such counsel, the attorney's fees and all other litigation expenses WE must pay to that counsel are limited to the rates WE actually pay to counsel WE retain in the ordinary course of business in the defense of similar CLAIMS in the community where the CLAIM arose or is being defended.

Additionally, WE may exercise the right to require that such counsel have certain minimum qualifications with respect to their legal competency including experience in defending CLAIMS similar to the one pending against YOU and to require such counsel to have errors and omissions insurance coverage. As respects any such counsel, YOU agree to require YOUR counsel to, in a timely manner, provide US with information regarding the CLAIM and to respond to OUR request for information regarding the

CLAIM.

YOU may at anytime, by YOUR signed consent, freely and fully waive YOUR right to select independent counsel.

## VI.     NOTICE OF CIRCUMSTANCE

If during the POLICY PERIOD YOU become aware of a circumstance from which a CLAIM is reasonably anticipated, and if during the POLICY PERIOD YOU give notice to US of:
1.     the alleged or actual WRONGFUL ACT;
2.     how and when YOU first became aware of such WRONGFUL;
then any CLAIM, for which coverage is provided by this policy, that may be made against YOU arising out of such WRONGFUL ACT shall be deemed for the purposes of this insurance to have been made on the date on which the notice was given to US. WE may elect to investigate any circumstance that is reported to US. Any costs associated with the investigation of a circumstance prior to a CLAIM being made will not be considered CLAIM EXPENSES. These costs shall not be applied towards reducing the applicable Deductible and are in addition to the Limits of Liability and shall be borne by US.

## VII.     EXTENDED REPORTING PERIOD

A.     Automatic Extended CLAIMS Reporting Period
If WE or YOU terminate or non-renew this insurance for any reason other than nonpayment of premium or Deductible, YOUR failure to comply with any term and condition, or fraud or material misrepresentation, YOU shall be entitled to a period of sixty (60) days from the date of policy termination to report CLAIMS which are made against YOU prior to such termination that took place on or after the RETROACTIVE DATE and before the expiration of the POLICY PERIOD.  This Automatic Extended CLAIMS Reporting Period may not be canceled by US and does not require the payment of an additional premium.  This automatic Extended CLAIMS Reporting Period does not increase or reinstate the Limits of Liability applicable under the policy and shall be included within the Optional Extended CLAIMS Reporting Period if such is purchased.

B.     Optional Extended CLAIMS Reporting Period
If YOU do not renew or replace this insurance, or if WE cancel or refuse to renew this policy for reasons other than the nonpayment of premium or Deductible, noncompliance with the terms and conditions of this policy or fraud or material misrepresentation, upon the payment of an additional premium, YOU shall have the option to extend the period by which a CLAIM can be made against YOU and reported to US.  This Optional Extended CLAIMS Reporting Period shall apply only to CLAIMS that took place on or after the RETROACTIVE DATE and before the expiration of the POLICY PERIOD.  This Optional Extended CLAIMS Reporting Period does not increase or reinstate the Limits of Liability applicable under the policy.

The premium for the Optional Extended CLAIMS Reporting Period shall be determined

by charging (1) 100% of the annual premium for twelve (12) months, (2) 150% for twenty-four (24) months, or (3) 200% for thirty-six (36) months. The purchase of an Optional Extended CLAIMS Reporting Period shall be endorsed herein.

YOUR right to purchase the Optional Extended CLAIMS Reporting Period must be exercised by notice in writing not later than thirty (30) days after the cancellation or termination date of this policy. Effective notice must indicate the total Optional Extended CLAIMS Reporting Period desired AND MUST INCLUDE PAYMENT OF PREMIUM FOR SUCH PERIOD. If such notice and the premium are not mailed to US within thirty (30) days, then YOU shall not at a later date be entitled to purchase an Optional Extended CLAIMS Reporting Period.

At the commencement of any Optional Extended CLAIMS Reporting Period, the entire premium therefore shall be deemed earned, and in the event YOU terminate the Optional Extended CLAIMS Reporting Period before its term for any reason, WE shall not be obligated to return to YOU any portion of the premium.

## VIII.   CONDITIONS

A.   Action Against US
No action shall lie against US unless, as a condition precedent thereto, there shall have been full compliance with all of the terms and conditions of this policy, and both YOUR liability and the amount of YOUR obligations to pay has been finally determined either by judgment against YOU after an actual trial or by YOUR written agreement with the claimant or the claimant's legal representative with OUR approval.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join US as a party to any action against YOU to determine YOUR liability, nor shall WE be impleaded by YOU or YOUR legal representative.

B.   Assignment
Assignment of interest under this policy shall not bind US without OUR express written consent.

C.   Audit And Inspection
Solely for OUR benefit, WE may audit or inspect YOUR books, records and operations at any time during the POLICY PERIOD or within three years after the termination of this policy, as far as they relate to the subject matter of this policy.

D.   Bankruptcy or Insolvency
YOUR bankruptcy or insolvency shall not relieve US of OUR obligations under this policy.

E.      Cancellation and Nonrenewal
        1.      Cancellation by YOU
                a.      YOU may cancel this policy by surrender thereof to US or any of OUR
                        authorized representatives or by mailing to US written notice stating
                        when thereafter such cancellation shall be effective.
                b.      If YOU cancel this policy, WE shall retain the customary short rate
                        proportion of the premium.

        2.      Cancellation by US
                a.      If this policy has been in effect less than sixty (60) days and is not a
                        renewal of a policy issued by US, WE may cancel this policy for any
                        reason.
                b.      If this policy has been in effect for sixty (60) days or more or is a renewal
                        of a policy issued by US, this policy may not be canceled except for one or
                        more of the following reasons:
                        (1)     Nonpayment of premium or Deductible when due;
                        (2)     Fraud or material misrepresentation affecting the policy;
                        (3)     Violation of any of the terms or conditions of the policy;
                        (4)     Loss of reinsurance; or
                        (5)     Material change in the risk.
                c.      Written notice of cancellation shall be mailed or delivered by US to YOU
                        at least:
                        (1)     Fifteen (15) days prior to the effective date of cancellation, if this
                                policy is canceled for nonpayment of premium; or
                        (2)     Sixty (60) days prior to the effective date of cancellation, if this
                                policy is canceled for any other reason.
                d.      Delivery shall be considered to be equivalent to mailing. Proof of mailing
                        shall be considered to be proof of notice.
                e.      If this policy is canceled by US, the earned premium shall be computed
                        pro rata.

        3.      Nonrenewal
                If WE elect not to renew this policy WE will mail a written notice at least sixty
                (60) days prior to expiration, unless the reason for nonrenewal is nonpayment of
                premium or YOUR deductible obligations or if YOU failed to comply with any
                other term or condition.  Proof of mailing shall be considered to be proof of
                notice.

F.      Changes
        The terms and conditions of this policy may only be altered by an endorsement issued
        by US.

G.      Choice of Law and Jurisdiction
        If a dispute arises over the meaning, interpretation or operation of any term, condition,
        definition or provision of this policy, YOU and WE agree that the substantive law of the

State of New York shall apply regardless of the choice of law or conflicts of law principles.

In the event that YOU and WE agree to resolve the dispute by arbitration, the Commercial Arbitration rules of the American Arbitration Association shall apply.

H.  Other Insurance
1.  The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance.  When this insurance is primary and YOU have other insurance which is stated to be applicable to the loss on an excess basis, the amount of OUR liability under this policy shall not be reduced by the existence of such insurance.

2.  When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess, or contingent, WE shall not be liable under this policy for a greater proportion of the loss than that stated in the Declarations or the following contribution provision; whichever is lower:
    a.  Contribution by Equal Shares - If all of such other valid and collectible insurance provides for contribution by equal shares, WE will follow this method also.  Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.
    b.  Contribution by Limits - If any of the other insurance does not permit contribution by equal shares, WE will contribute by limits.  Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

I.  Representations
By acceptance of this policy, YOU agree that the statements in the application and its attachments are YOUR agreements and representations, that this policy is issued in reliance upon the truth of such representations, and that this policy, its Declarations and endorsements embody all agreements existing between YOU and US relating to this insurance.

J.  Separation of Insureds
Except with respect to the Limits of Liability, and any rights or duties specifically assigned to YOU, this insurance applies:
1.  As if each Named INSURED were the only Named INSURED; and
2.  Separately to each INSURED against whom a CLAIM is made.

Misrepresentation, concealment, breach of contract or violation of any duty under this policy by one INSURED shall not prejudice the interest of coverage of another INSURED under this policy.

K.  Sole Agent

The first Named INSURED shall act on behalf of all INSUREDS for all purposes, including but not limited to the payment or return of premium, receipt and acceptance of any endorsement issued to form a part of this policy, complying with all applicable CLAIMS provision, giving and receiving notice of cancellation or nonrenewal, reimbursement to US of any Deductible advanced and the exercise of the rights provided in the Extended CLAIMS Reporting Period or Paragraph L. below.

L.    Subrogation

In the event of any payment under this policy, WE shall be subrogated to all YOUR rights of recovery against any person or organization and YOU shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. YOU shall do nothing to prejudice such rights.

WE shall not exercise any such right against any persons, firms or corporations included in the definition of an INSURED or against YOUR clients if prior to the CLAIM, a waiver of subrogation was so required and accepted under a specific contractual undertaking by YOU.

All recoveries obtained through subrogation shall be applied equally towards YOUR Deductible and OUR costs with any remaining balance payable to US.

M.    Policy Territory

The insurance afforded by this policy applies worldwide. Where suits are brought or CLAIMS are made outside of the United States of America and its territories and possessions, Puerto Rico, or Canada, the following additional provisions apply:

1. WE shall have the right but not the duty to investigate, defend or settle any such CLAIMS brought against an INSURED;
2. If WE elect not to investigate, defend or settle any such CLAIM, the INSURED shall, under OUR supervision, arrange for such investigation and defense thereof as is reasonably necessary and subject to OUR prior authorization, shall effect such settlement thereof as WE and an INSURED deem expedient;
3. WE will reimburse the INSURED for the reasonable cost of such investigation and defense and the amount of any settlement or judgment in excess of the Deductible amount stated in the Declarations, all subject to and within the Limits of Liability stated in the Declarations; and
4. Such reimbursement shall be made in United States currency at the rate of exchange prevailing on the date the judgment is rendered or the date that the amount of the settlement is agreed upon or the date expenditure is made.

**COMMON POLICY CONDITIONS ENDORSEMENT**

This endorsement changes the Policy.  Please read it carefully.

In consideration of the premium charged, and notwithstanding anything contained in this policy to the contrary, it is hereby agreed that all coverage parts included in this policy are subject to the following conditions:

**A.      CANCELLATION**

The *named insured* may cancel this policy by mailing to the Company written notice stating when thereafter such cancellation shall become effective. The Company may cancel this policy by mailing to the *named insured*, at the mailing address specified the Declarations, written notice stating when not less than thirty (30) days thereafter such cancellation shall become effective, except in the event of the *named insured's* nonpayment of premium, not less than ten (10) days advance notice of cancellation shall be given. The mailing of notice as aforesaid, shall be sufficient proof of either party's intent to cancel. The effective date of cancellation specified in such notice shall terminate this *policy period*.  Delivery of such notice shall be equivalent to mailing.

If the *named insured* cancels, the earned premium shall be computed in accordance with the customary short rate table. If the Company cancels, the earned premium shall be computed pro rata. The Company will tender any return premium subject to retaining a minimum earned premium equal to 25% of the amount specified in the Declarations.

Premium adjustment may be made either at the time cancellation is effective or as soon as practicable thereafter, but tender of the unearned premium or return of this policy, shall not be conditions precedent to cancellation hereunder.

**B.      CHANGES**

No provision of this policy may be amended, waived or otherwise changed, except by endorsement hereto.

**C.      EXAMINATION OF YOUR BOOKS AND RECORDS**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three (3) years afterward.

**D.      INSPECTIONS AND SURVEYS**

We have the right, but are not obliged to:

**1.**      Make inspections and surveys at any time; and

**2.** Give you reports on the conditions we find; and

**3.** Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. We do not warrant that conditions:

**1.** Are safe or healthful; or

**2.** Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service, engineering firm or similar organization which makes insurance inspections, surveys, reports or recommendations.

**E.** **NAMED INSURED AS AGENT**

The *named insured* specified in the Declarations shall be deemed agent of each *insured* with respect to all matters involving this policy, however, the Company shall have the right to seek indemnification from any *insured* or any other person who may be legally liable for the debts of the *named insured*.

**F.** **PREMIUMS**

The first *Named Insured* shown in the Declarations:

**1.** Is responsible for the payment of all premiums; and

**2.** Will be the payee for any return premiums we pay; and

**3.** Is responsible for the payment of all deductibles and self-insured retention amounts under this policy.

**G.** **ADDITIONAL PREMIUMS**

If, during this *policy period*, an increase in the risk or hazards covered hereunder occurs, the Company shall have the right to charge the appropriate additional premium.

**H.** **TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual *Named Insured*. If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**I.**     **BANKRUPTCY**

Bankruptcy or insolvency of the *insured* or of the *insured's* estate will not relieve us of our obligations under this Coverage Part.

**MOLD, MILDEW AND FUNGUS DEDUCTIBLE ENDORSEMENT**

This endorsement changes the Policy.  Please read it carefully.

| Deductible  $ 50,000 |
|---|

In consideration of the premium charged, and notwithstanding anything contained in this policy to the contrary, it is hereby agreed that such coverage as is afforded by this policy shall be subject to a Deductible shown above applicable to each CLAIM arising directly or indirectly out of, or in concurrence with actual, alleged or threatened existence, growth, spread, proliferation, discharge, dispersal, seepage, release or escape of any form of fungus, including mold or mildew, and any mycotoxins, spores, scents or byproducts produced or released by fungi.

**ADDITIONAL INSURED ENDORSEMENT**

This endorsement changes the Policy.  Please read it carefully.

This endorsement modifies insurance provided under the following:

**CONTRACTORS POLLUTION LIABILITY COVERAGE**

Name of Person or Organization:

Any person(s) or organization(s) whom the Named Insured agrees, in a written contract, to name as an additional insured.  However, this status exists only for the project specified in that contract.

The person or organization shown in this Schedule is included as an insured, but only with respect to that person's or organization's liability arising out of COVERED OPERATIONS performed for that insured.

**PRIMARY AND NON-CONTRIBUTORY ENDORSEMENT**

This endorsement changes the Policy.  Please read it carefully.

**<u>SCHEDULE</u>**

Name of Person or Organization:

Any person(s) or organization(s) whom the Named Insured agrees, in a written contract, to provide Primary and/or Non-contributory status of this insurance. However, this status exists only for the project specified in that contract.

In consideration of the premium charged, it is hereby agreed that this policy shall be considered primary to any similar insurance held by third parties in respect to work performed by you under any written contractual agreement with such third party.  It is further agreed that any other insurance which the person(s) or organization(s) named in the schedule may have is excess and non-contributory to this insurance.

**POLICY AGGREGATE LIMIT ENDORSEMENT**

This endorsement changes the Policy. Please read it carefully.

In consideration of the premium charged, and notwithstanding anything contained in this policy to the contrary, it is hereby agreed that all coverage parts included in this policy are subject to the following:

As specified in the Declarations:

1. The "Policy Aggregate Limit for All Claims and Damages" amount shown in the declarations is the maximum amount WE will pay under all Coverage Parts combined that form a part of this policy, for all CLAIMS AND DAMAGES arising from covered CLAIMS.
2. The "Policy Aggregate Limit for All Claims Expenses" amount shown in the declarations is the maximum amount WE will pay under all Coverage Parts combined that form a part of this policy, not including the Commercial General Liability coverage parts, if applicable, for all CLAIMS EXPENSES arising from covered CLAIMS.

**WAIVER OF SUBROGATION ENDORSEMENT**

This endorsement changes the Policy.  Please read it carefully.

This endorsement modifies insurance provided under the following:

**PROFESSIONAL LIABILITY COVERAGE**
**CONTRACTORS POLLUTION LIABILITY COVERAGE**

SCHEDULE

Name of Person or Organization:

Any person(s) or organization(s) to whom the Named Insured agrees, in a written contract, to provide a waiver of subrogation.  However, this status exists only for the project specified in that contract.

The Company waives any right of recovery it may have against the person or organization shown in the above Schedule because of payments the Company makes for injury or damage arising out of the insured's work done under a contract with that person or organization.  The waiver applies only to the person or organization in the above Schedule.

Under no circumstances shall this endorsement act to extend the policy period, change the scope of coverage or increase the Aggregate Limits of Insurance shown in the Declarations.

**TRANSPORTATION OF CARGO – POLLUTION ENDORSEMENT**

This endorsement, effective attaches to and forms a part of the Policy.

This endorsement changes the Policy.  Please read it carefully.

This endorsement modifies insurance provided under the following:

**CONTRACTORS POLLUTION LIABILITY COVERAGE**

In consideration of an additional premium in the amount of $<u>INCLUDED </u>it is hereby agreed that Exclusion H. is deleted and replaced with the following:

A CLAIM related to POLLUTION CONDITIONS which result from the use, ownership, operation, maintenance or entrustment to others of any AUTO, aircraft, watercraft or rolling stock or operated by, or leased, rented or loaned to any Insured.

The exclusion shall not apply to POLLUTION CONDITIONS which:

i)      resulting from the release from a COVERED AUTO and emanating from the TRANSPORTED CARGO.
ii)     occur during loading or unloading operations or;
iii)    commence during the transportation of YOUR PRODUCT or wastes by a CARRIER; and
iv)     result in BODILY INJURY, PROPERTY DAMAGE, or CLEANUP COSTS during the transportation of YOUR PRODUCT or wastes; and
v)      commence on or after the inception of this policy.

No coverage is provided for the WRONGFUL DELIVERY of any liquid product by AUTO, aircraft, watercraft or rolling stock.

The following definitions are added to this policy:

**II. DEFINITIONS**

A.  COVERED AUTO means the following provided they are indicated with an "X".

_____Specifically described AUTO listed below in the Schedule of AUTO.

___X_____Owned AUTO only.  Only those AUTOS the INSURED owns (and any trailers the INSURED does not own while connected to a power unit the INSURED owns).  This includes those AUTOS the INSURED acquires ownership of after the policy begins.

    X    Hired AUTO only.  Only those AUTOS the INSURED leases, hires, rents or borrows.  This does not include any private passenger type AUTO the INSURED leases, hires, rents or borrows from the INSURED, any of its employees, partners or agents.

    X    Non-owned AUTO only.  Only those AUTOS the INSURED does not own lease, hire, rent or borrow that are used in connection with the INSURED(S) business.  This includes AUTOS owned by employees or partners or members of their households but only while used in the INSURED(S) business.

B.  CARGO means goods, products or wastes carried for delivery on or within a COVERED AUTOM that is properly licensed to transport such goods, products or wastes.

C.  CARRIER means a person or entity, other than the INSURED or any subsidiary or affiliated company of the INSURED, engaged in the business of transporting property for hire by AUTO, rolling stock, aircraft or watercraft.

D.  TRANSPORTED CARGO means CARGO after it is moved from the place where it is accepted for movement into or on to the COVERED AUTO, until the CARGO is moved from the COVERED AUTO to the place where it is finally delivered.  TRANSPORTED CARGO also includes CARGO during the loading and unloading to or from a COVERED AUTO, provided that the loading or unloading is performed by the INSURED.  TRANSPORTED CARGO does not include CARGO at rest for a period of longer than seventy-two (72) hours, after it has been accepted for movement into or onto a COVERED AUTO but before it reaches the place of final delivery.

E.  WRONGFUL DELIVERY means the delivery of any CARGO into the wrong receptacle or to the wrong address, or the delivery of one type of CARGO in error for another.

| SCHEDULE OF AUTOS | |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DESIGNATION OF SURPLUS LINES AGENT

This endorsement modifies insurance provided under the following:

It is agreed that the Surplus Lines Agent with respect to this policy is as follows:

<u>Surplus Lines Agency</u>

RT Specialty, LLC - Chicago

**DEFENSE INCLUDED ENDORSEMENT**

This endorsement changes the Policy.  Please read it carefully.

This endorsement modifies insurance provided under the following:

**PROFESSIONAL LIABILITY COVERAGE**

SCHEDULE

**IV.**    **LIMITS OF LIABILITY AND DEDUCTIBLE**

A.    EACH CLAIM LIMIT OF LIABILITY
Our liability for Each Claim for DAMAGES and CLAIMS EXPENSES shall not exceed the amount stated in the Declarations as the Each Claim Limit of Liability.

B.    AGGREGATE LIMIT OF LIABILITY
OUR liability as a result of all CLAIMS for DAMAGES and CLAIMS EXPENSES shall not exceed the amount stated in the Declarations as the Aggregate Limit of Liability Each POLICY PERIOD and Optional Extended CLAIMS Reporting Period, if purchased.

C.    DEDUCTIBLE
As a condition to OUR liability under this policy, the Deductible amount stated in the Declarations shall be paid by YOU and shall be applicable to each CLAIM and shall include all DAMAGES and CLAIM EXPENSES up to the Deductible amount for each CLAIM.

YOUR total Deductible payments, in respect to each CLAIM, shall not exceed the Deductible amount stated in the Declarations.  We may from time to time advance payments for DAMAGES, LOSSES or CLAIM EXPENSES within the Deductible.  ANY amounts first paid by US with the Deductible shall, upon written demand by US, be paid by YOU to US within thirty (30) days.

D.    MULTIPLE INSUREDS, CLAIMS AND CLAIMANTS
The Limits of Liability stated in the Declarations and described herein are the most WE will pay, regardless of the number of INSUREDS, CLAIMS, or individuals or entities making CLAIMS.  One or more CLAIMS arising out of a single WRONGFUL ACT or out of a series of related WRONGFUL ACTS shall be treated as a single CLAIM, and shall be

Case 1:23-cv-00451-WCG     Filed 04/06/23     Page 72 of 83     Document 1-1

subject to the Each CLAIM Limit of Liability and only one Deductible. All such CLAIMS, whenever made, shall be considered first made on the date on which the earliest CLAIM was first made.

E.    MEDIATION
If YOU agree with US to use MEDIATION to resolve a CLAIM brought against YOU and if such CLAIM is resolved thereby, the Deductible stated in the Declarations shall be reduced by 50% for such CLAIM subject to a maximum reduction of $25,000.

**DEFENSE INCLUDED ENDORSEMENT**

This endorsement changes the Policy.  Please read it carefully.

This endorsement modifies insurance provided under the following:

**CONTRACTORS POLLUTION LIABILITY COVERAGE**

SCHEDULE

A.    Each Claim Limit of Liability

OUR liability for LOSS and CLAIMS EXPENSES for each CLAIM arising from the same, continuous, repeated or related POLLUTION EVENT shall not exceed the amount stated in the Declarations as the Each CLAIM Limit of Liability.

B.    Aggregate Limit of Liability Each Policy Period

OUR liability as a result of all CLAIMS and CLAIMS EXPENSES for LOSSES shall not exceed the amount stated in the Declarations as Aggregate Limit of Liability Each POLICY PERIOD.

C.    Deductible

As a condition precedent to OUR liability under this Policy, the Deductible amount as stated in the Declarations shall be paid by YOU and shall be applicable to each CLAIM and shall include all LOSSES and CLAIM EXPENSES up to the Deductible amount for each CLAIM.

YOUR total Deductible payments, in respect to each CLAIM shall not exceed the Deductible amount stated in the Declarations. WE may from time to time advance payments for LOSSES and CLAIM EXPENSES within the Deductible. Any amounts first paid by US within the Deductible shall, upon written demand by US, be paid by YOU to US within thirty (30) days.

D.    Multiple Insureds, Claims and Claimants

The Limits of Liability shown in the Declarations and described herein are the most WE will pay, regardless of the number of INSUREDS, CLAIMS, or individuals or entities making CLAIMS.  One or more CLAIMS arising out of a single POLLUTION EVENT or out of

a series of related POLLUTION EVENTS shall be treated as a single CLAIM, and shall be subject to the Each CLAIM Limit of Liability and only one Deductible.

If the same, continuous, repeated or related POLLUTION EVENT results in BODILY INJURY or PROPERTY DAMAGE which occurs during POLICY PERIODS of different Contractors Pollution Liability Policies issued to YOU by US, all such BODILY INJURY or PROPERTY DAMAGE shall be deemed to have occurred only during the POLICY PERIOD of the first Contractors Pollution Liability Policy in which any BODILY INJURY or PROPERTY DAMAGE occurred.

E.      MEDIATION

If WE and YOU agree to use MEDIATION to resolve a CLAIM brought against YOU and if such CLAIM is resolved thereby, the Deductible stated in the Declarations shall be reduced by 50% for such CLAIM subject to a maximum reduction of $25,000.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**
**AMENDATORY ENDORSEMENT**

**TCPA EXCLUSION**

In consideration of the premium charged, it is hereby understood and agreed that the insurance provided by this Policy does not apply to any **Claim** based upon or arising directly, or indirectly, out of any actual or alleged violation of the following:

1. The Telephone Consumer Protection Act (TCPA), including any amendment or addition to such law;
2. The Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 (CAN-SPAM Act), including any amendment or addition to such law;
3. The Fair Credit Reporting Act (FCRA), including any amendment or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA);
4. Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating, or distribution of material or information; or
5. Any other law, ordinance, regulation or statute relating to any communication, distribution, publication, sending or transmission via telephone, telephone facsimile machine, computer or other telephonic or electronic devices.

In addition, this insurance does not apply to **Claims** asserted under the common law which are alleged to arise out of the distribution, publication, sending or transmission of material or information via telephone, telephone facsimile machine, computer or other telephonic or electronic devices.

All other policy Terms and Conditions remain unchanged.

PGI PL 074 1212

# PRIOR AND PENDING LITIGATION EXCLUSION ENDORSEMENT

This policy does not apply to any claim(s) arising from:

1. any claim or litigation against any Insured occurring prior to, or pending as of 06/01/2015 including (but not limited to) claims, demands, causes of actions, legal or quasi-legal proceedings, decrees, or judgments;

2. any subsequent litigation or claims arising from, or based on substantially the same matters as alleged in the pleadings of such prior or pending litigation;

3. any act, error, omission or personal injury of any insured(s) which gave rise to such prior or pending litigation or claims.

PGI EL 052 0614                    Page  1  of  1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EXCLUSION – ALL WORK PERFORMED IN THE STATE OF NEW YORK**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART**

**SCHEDULE:**

| |
|---|
| **Description of your work:   All work performed in the State of New York.** |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance does not apply to "bodily injury" or "property damage" included in the "products-completed operations hazard" and arising out of "your work" shown in the Schedule.

PGI EL 057 0915

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DEDUCTIBLE LIABILITY INSURANCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| Coverage | Amount and Basis of Deductible | |
|---|---|---|
| | PER CLAIM   or | PER OCCURRENCE |
| Bodily Injury Liability | $ | $ |
| OR | | |
| Property Damage Liability | $ | $ |
| OR | | |
| Bodily Injury Liability and/or Property Damage Liability Combined | $ | $ 10,000 |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**APPLICATION OF ENDORSEMENT** (Enter below any limitations on the application of this endorsement. If no limitation is entered, the deductibles apply to damages for all "bodily injury" and "property damage", however caused):

**A.** Our obligation under the Bodily Injury Liability and Property Damage Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages.

**B.** You may select a deductible amount on either a per claim or a per "occurrence" basis. Your selected deductible applies to the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above. The deductible amount stated in the Schedule above applies as follows:

**1. PER CLAIM BASIS.** If the deductible amount indicated in the Schedule above is on a per claim basis, that deductible applies as follows:

   **a.** Under Bodily Injury Liability Coverage, to all damages sustained by any one person because of "bodily injury";

   **b.** Under Property Damage Liability Coverage, to all damages sustained by any one person because of "property damage"; or

   **c.** Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages sustained by any one person because of:

     **(1)** "Bodily injury";

     **(2)** "Property damage"; or

     **(3)** "Bodily injury" and "property damage" combined

as the result of any one "occurrence".

If damages are claimed for care, loss of services or death resulting at any time from "bodily injury", a separate deductible amount will be applied to each person making a claim for such damages.

With respect to "property damage", person includes an organization.

Copyright, Insurance Services Office, Inc., 1994

Case 1:23-cv-00451-WCG   Filed 04/06/23   Page 79 of 83   Document 1-1

**2. PER OCCURRENCE BASIS.** If the deductible amount indicated in the Schedule above is on a "per occurrence" basis, that deductible amount applies as follows:

    **a.** Under Bodily Injury Liability Coverage, to all damages because of "bodily injury";

    **b.** Under Property Damage Liability Coverage, to all damages because of "property damage"; or

    **c.** Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages because of:

        **(1)** "Bodily injury";

        **(2)** "Property damage"; or

        **(3)** "Bodily injury" and "property damage" combined

as the result of any one "occurrence", regardless of the number of persons or organizations who sustain damages because of that "occurrence".

**C.** The terms of this insurance, including those with respect to:

    **1.** Our right and duty to defend the insured against any "suits" seeking those damages; and

    **2.** Your duties in the event of an "occurrence", claim, or "suit"

apply irrespective of the application of the deductible amount.

**D.** We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

Copyright, Insurance Services Office, Inc., 1994

**CG 03 00 01 96**  □

*This Endorsement Changes The Policy. Please Read It Carefully.*

# NETWORK SECURITY AND PRIVACY COVERAGE

This endorsement modifies insurance provided under the following:

**Sublimit of Liability**

**Each Claim $ 250,000**

**Aggregate $ 250,000**

**1.** In consideration of an additional premium charge of $ , it is agreed that coverage shall apply to CLAIMS and CLAIM EXPENSES which the Insured is legally obligated to pay as a result of an accidental release, unauthorized access, distribution, disclosure, use or theft of CONFIDENTIAL PERSONAL INFORMATION maintained by the Insured or by a party for whom the Insured is responsible.

CONFIDENTIAL PERSONAL INFORMATION means any information not available to the general public of any natural person who is a consumer, customer or employee of the Company which can be used to identify such natural person and which is maintained by the Company. This information includes *Private Healthcare Information and any other information subject to federal or state privacy laws.*

**2.** It is agreed that solely for purposes of coverage provided in this endorsement, CLAIMS shall include civil fines and penalties that may be incurred as a result of an accidental release, as described above, of CONFIDENTIAL PERSONAL INFORMATION.

**3.** The Company shall also reimburse the Named Insured, subject to the prior written consent of the Company, for the reasonable costs incurred by the Named Insured for the following:

**A.** Notification to consumers, customers or employees, including any necessary preparation, legal and advertising costs, in the event of a suspected or known accidental release, unauthorized access, distribution, disclosure, use or theft of CONFIDENTIAL PERSONAL INFORMATION maintained by the Insured or by a party for whom the Insured is responsible. This coverage also includes credit monitoring costs to such consumers, customers or employees for up to six months;

**B.** Professional Services performed by a public relations, crisis management or law firm to minimize potential harm to the Named Insured's business, including the cost of placing advertisements and press releases;

**C.** Costs of a forensic investigation to determine the cause or perpetrator of an accidental release, unauthorized access, distribution, disclosure, use or theft of CONFIDENTIAL PERSONAL INFORMATION maintained by the Insured or by a party for whom the Insured is responsible.

**4.** It is agreed that coverage for CLAIMS and CLAIM EXPENSES covered by this endorsement is limited to the **Sublimit of Liability** shown above, at the beginning of this endorsement. This **Sublimit of Liability** is part of and not in addition to the applicable Limits of Liability as shown on the Declarations page. Payment of CLAIMS and CLAIM EXPENSES by the Company reduces the applicable Limits of Liability as shown on the Declarations Page.

All other terms and conditions of this policy remain unchanged.

PGI EL 059 0917



**POLICYHOLDER DISCLOSURE**

**NOTICE OF TERRORISM INSURANCE COVERAGE – TRIA DECLINED**

This Notice is issued in accordance with the terms and conditions of the Terrorism Risk Insurance Act, as amended (the "Act").

You are hereby notified that coverage for "insured losses" directly resulting from an "act of terrorism" as defined in the Act, as explained in the Policyholder Disclosure notice, (1) was made available to you; and (2) you declined or failed to confirm the purchase of such coverage. Therefore, this insurance does not provide coverage for losses directly resulting from any "act of terrorism" as defined by the Act except to the extent, if any, otherwise provided by this Policy.

**INSTRUCTION TO BROKER**

You are instructed to deliver a copy of this notice to our insured.

*Includes copyrighted material 2015 National Association of Insurance Commissioners*

TRIA DECLINED DISCLOSURE 01-15    Page 1 of 1

**IMPORTANT NOTICE CONCERNING**

**U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")**

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of the Policy. You should read the Policy and review the Declarations page for complete information on the coverages provided.

This Notice provides information concerning possible impact on the insurance coverage due to directives issued by OFAC. **Please read this Notice carefully**.

OFAC administers and enforces sanctions policy, based on Presidential declarations of "national emergency". On an ongoing basis OFAC identifies and lists numerous individuals, entities and sanctions with respect to a particular country, including, but not limited to:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http://www.treasury.gov/offices/enforcement/ofac/.

In accordance with OFAC regulations, if it is determined that an Insured or any person or entity claiming the benefits of this insurance has violated U.S. sanctions laws or regulations or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to the laws and regulations administered and enforced by OFAC. When an insurance policy is considered to be a blocked or frozen contract, no payments or premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments may also apply.